[No. 10142–8–III.   Division Three.   August 23, 1990.]

*In the Matter of the Marriage of* LUANNE L. FOX,
*Respondent, and* KENNETH R. FOX,
*Appellant.*

*Gary J. Libey* and *Nuxell, McBride & Libey,* for appellant.

*Martin Salina* and *Salina, Sanger & Gauper,* for respondent.

SHIELDS, J.—Kenneth Fox appeals an award of maintenance for 3 years and attorney fees on dissolution of his marriage to Luanne Fox. We affirm.

Ken and Luanne Fox were married on May 21, 1977, and have one child as a result of their marriage. Prior to their marriage, Ms. Fox received $179,172 from the estate of her first husband. In order to protect these assets, Ms. Fox's attorney drafted an antenuptial agreement which each signed. The agreement provided the separate property of each would remain separate after marriage, upon divorce any community property would be divided equally, and "neither shall have any other claim against the other for property, support, attorney's fees, costs, or anything else whatsoever."

On September 15, 1988, Ms. Fox filed a petition for dissolution, seeking temporary maintenance. Mr. Fox was employed, earning approximately $41,000 annually plus significant fringe benefits. Ms. Fox was a student at a local community college, employed part time at a clothing store and at a high school, earning approximately $350 per month. Mr. Fox, admitting he had forgotten the terms of the antenuptial agreement, made temporary maintenance payments for several months, then moved pretrial to vacate the award. The court stayed his motion pending trial.

After trial, the court found Ms. Fox had transferred all her separate funds during marriage to the joint community checking account, and the funds were then spent by both parties on improvements to the family home awarded to Ms. Fox, living expenses and other nonidentifiable items.

The court also found Mr. Fox inherited $36,000 during marriage which he also placed in the joint account and which was spent by both parties on living expenses. The court concluded the antenuptial agreement was not valid and was unenforceable for these reasons: (1) it was unfair at the time of its execution because (a) Ms. Fox's attorney did not advise her of the continuing need to keep her separate property segregated and (b) since Mr. Fox was intended to be the primary wage earner, it precluded the court from considering the disparate economic circumstances of the parties; (2) the agreement was contrary to public policy;[1] and (3) the parties had rescinded the agreement and could not seek enforcement of it.[2] The court also concluded Ms. Fox needed, and Mr. Fox was capable of paying, spousal maintenance and her attorney fees incurred during trial.

Mr. Fox contends the trial court erred in finding the antenuptial agreement unfair at its inception. Specifically, he appeals the award of spousal maintenance and Ms. Fox's attorney fees.[3] No error is assigned to the award of property.

*In re Marriage of Matson,* 107 Wn.2d 479, 482–83, 730 P.2d 668 (1986) (quoting *Whitney v. Seattle–First Nat'l Bank,* 90 Wn.2d 105, 110, 579 P.2d 937 (1978)) sets out a 2–prong analysis for evaluating the validity of an antenuptial agreement:

---

[1]The court relied on dictum in *Decker v. Decker,* 52 Wn.2d 456, 326 P.2d 332 (1958) to support this conclusion, an issue which need not be discussed to determine this appeal.

[2]The court used the phrase "waived their right to seek enforcement of [it]". Waiver, however, is essentially unilateral, an intentional or voluntary relinquishment by a party of a known right. A rescission on the other hand puts an end to a contract as though it never were. *See* Black's Law Dictionary 1417, 1174 (5th ed. 1979) (citing *Russell v. Stephens,* 191 Wash. 314, 315, 71 P.2d 30 (1937)).

[3]At oral argument Mr. Fox conceded an agreement which waives the right to child support would be void for violating public policy. *See In re Marriage of Pippins,* 46 Wn. App. 805, 808, 732 P.2d 1005 (1987). That portion of the agreement, which arguably waives the right to child support, is void for that reason alone.

First, the court must decide whether the agreement provides a fair and reasonable provision for the *party not seeking enforcement* of the agreement. If the court makes this finding, then the analysis ends and the agreement may be validated. . . .

. . . .

The second prong of this analysis involves two tests . . . (1) whether full disclosure has been made by [the parties] of the amount, character and value of the property involved, and (2) whether the agreement was entered into fully and voluntarily on independent advice and with full knowledge by [both spouses of their] rights. . . .

(Italics ours.) At the time of the execution of the agreement, Ms. Fox had substantially more separate property than Mr. Fox. Therefore, the agreement at the time of its execution provided a fair and reasonable property division provision for her. Because she did not seek to enforce it, under the rule in *Matson,* the analysis ends. The second prong need not be addressed.[4] The court's first conclusion to the contrary is in error. The agreement was valid and enforceable at the time of its execution, but that determination is not dispositive. We must also consider whether the agreement was rescinded by the conduct of the parties during marriage.

■ The burden is upon the spouse seeking to enforce such an agreement to show it has been strictly observed in good faith. *Mumm v. Mumm,* 63 Wn.2d 349, 352, 387 P.2d 547 (1963); *Kolmorgan v. Schaller,* 51 Wn.2d 94, 98, 316 P.2d 111, 67 A.L.R.2d 704 (1957). When the evidence and unchallenged findings show the parties did not mutually observe an antenuptial property agreement, the court is not bound to enforce it, but may determine the intentions of the parties, in light of the circumstances before and during marriage, to determine its binding effect. *In re Marriage of Sanchez,* 33 Wn. App. 215, 217–18, 654 P.2d 702 (1982). It is virtually undisputed neither party observed the terms of the agreement after its initial implementation. Mr. Fox

---

[4]Although we need not address it, the second prong was met because the agreement was prepared by Ms. Fox's attorney and there was apparently a full disclosure.

contributed the full amount of his inheritance to the community joint account which was spent for community expenses. Likewise, Ms. Fox contributed virtually all of her separate funds to acquire the parties' residence, improve it and meet community expenses. This is sufficient evidence to support the court's third conclusion the parties had rescinded the agreement.

Antenuptial agreements have a derived statutory basis in the statute of frauds, RCW 19.36.010, as an agreement made upon consideration of marriage. Upon such consideration, they must be made in writing to be valid contracts. Washington State Bar Ass'n, *Community Property Deskbook* § 5.10, at 5–1 (2d ed. 1989). On the other hand, antenuptial agreements made upon mutual promises to marry under the statute need not be in writing. They may be established by evidence of the conduct of the spouses after marriage to infer such an agreement. In the latter case, mutual observance becomes essential to establish by implication the existence of an asserted agreement not in writing. Cross, *The Community Property Law in Washington,* 61 Wash. L. Rev. 13, 106–07 (1986). The laws of contract respecting rescission of antenuptial agreements, whether in writing or not, are applicable: an agreement to rescind must also be a valid contract, requiring assent of the parties. *In re Estate of Whittman,* 58 Wn.2d 841, 844, 365 P.2d 17 (1961). A contract to rescind may also be in writing or inferred. *See Community Property Deskbook* § 5.10, at 5–10 to 5–11. The subsequent disregard of an antenuptial agreement may establish an intent to abandon it, which may constitute a rescission when factually probable because each party knew the other had made the contribution of all separate property to the community bank account. *See Whittman,* at 845. Here, the agreement was made in 1977, the action for dissolution commenced in 1988. The time lapse between execution of the agreement and commencement of the dissolution and the subsequent conduct of the parties was, under the facts presented here, sufficient to show an intent to abandon the agreement, as

suggested by Professor Cross. An intent to abandon the agreement constitutes a rescission and abrogation of the agreement in all its provisions.

Ms. Fox has requested attorney fees and costs on appeal. She submitted an affidavit which supports her current need as required by RCW 26.09.140. Her attorney submitted an affidavit in compliance with RAP 18.1(c) which indicates $1,820 in attorney fees have been incurred on appeal. Mr. Fox has not submitted any contravening affidavit regarding need or ability to pay, nor has he challenged the amount requested. The amount appears reasonable; we therefore find Ms. Fox is entitled to an award of attorney fees and costs in the amount of $1,820. *See In re Marriage of Sanborn*, 55 Wn. App. 124, 777 P.2d 4 (1989).

The conclusion of the Superior Court on the basis of rescission is affirmed.[5]

MUNSON, C.J., and THOMPSON, J., concur.

---

[5]Having made this determination, we need not address whether Mr. Fox waived his right to assert the antenuptial agreement by making temporary maintenance payments pending trial.