[No. 71491-6.  En Banc.]
Argued March 14, 2002.    Decided August 8, 2002.

*In the Matter of the Estate of* ANGELINE V. BACHMEIER.

SANDRA L. JOHNSON, *Respondent*, v. JOHN BACHMEIER, *Petitioner*.

*Kenneth E. Rossback*, for petitioner.

*Jeffrey P. Helsdon* (of *McFerran & Helsdon, P.S.*) and *Christopher M. Constantine*, for respondent.

JOHNSON, J. — **[1-4]** This case involves whether a community property agreement may impliedly terminate by operation of law when the marriage underlying it becomes defunct. We hold it does not and reverse the Court of Appeals decision, *In re Estate of Bachmeier*, 106 Wn. App. 862, 25 P.3d 498 (2001). We remand for further proceedings consistent with this opinion.

## FACTS

John and Angeline Bachmeier were married in Reno, Nevada, on June 23, 1966. On March 16, 1977, the Bachmeiers executed a form agreement regarding the status of community property that did not include a provision to terminate the agreement if the parties separated. The Bachmeier community property agreement (CPA) provided:

> That, in consideration of the love and affection that each of said parties has for the other, and in consideration of the mutual benefits to be derived by the parties hereto, it is hereby agreed, covenanted, and promised:
>
> I.
>
> That all property of whatsoever nature or description whether real, personal or mixed and wheresoever situated now owned or hereafter acquired by them or either of them shall be considered and is hereby declared to be community property.

## II.

That upon the death of either of the aforementioned parties title to all community property as herein defined shall immediately vest in fee simple in the survivor of them.

Clerk's Papers at 9.

During February 1998, after 32 years of marriage, the Bachmeiers began to live apart. On February 23, 1998, John Bachmeier filed a petition for legal separation. On July 18, 1998, two days before her death, Angeline Bachmeier executed a will naming her daughter, Sandra Johnson, as her personal representative, bequeathing her entire residual estate to Johnson, and expressly disinheriting her husband, John Bachmeier.

On August 12, 1998, Johnson petitioned the court to probate Angeline Bachmeier's will and to appoint her the personal representative of Angeline Bachmeier's estate. John Bachmeier contested the proposed probate. Bachmeier moved to dismiss the petition or, alternatively, to have himself appointed personal representative and have Angeline Bachmeier's property declared his under the CPA. On September 3, 1998, the trial court admitted Angeline Bachmeier's will to probate and appointed John Bachmeier as personal representative. The trial court denied Johnson's petition for a declaration of rights regarding the administration of the estate.

We denied Johnson's request for direct discretionary review and transferred the case to the Court of Appeals. The Court of Appeals implied a term to the CPA, which would terminate it should the Bachmeier's marriage be found to have become defunct. The Court of Appeals remanded the matter to the trial court for further proceedings to determine whether the marriage had, in fact, been defunct. We accepted review.

### ANALYSIS

Under RCW 26.16.120, a husband and wife may agree to designate all of their property as community property and vest complete title in one spouse upon the death of the other

through a writing acknowledged and certified in the same manner as a real estate deed. The statute provides that CPAs may be altered or amended in the same manner as executed but is silent regarding how CPAs may otherwise be rescinded. RCW 26.16.120. The purpose of a three-prong CPA, as is at issue here, is to convert all current and after-acquired property to community property and to transfer title of all community property to the surviving spouse. Harry M. Cross, *The Community Property Law in Washington (Revised 1985)*, 61 WASH. L. REV. 13, 101 (1985).

We have recognized CPAs that do not include express terms of revocation may be set aside in two circumstances. First, a CPA may be rendered inoperable by a final divorce decree. *In re Lyman's Estate*, 7 Wn. App. 945, 950-51, 503 P.2d 1127 (1972). Second, CPAs may be rescinded by mutual assent. *Higgins v. Stafford*, 123 Wn.2d 160, 166, 866 P.2d 31 (1994). Johnson argues for a third approach, one requiring courts to imply a termination clause to a CPA should the underlying marriage become defunct. The Court of Appeals embraced this approach, which is based primarily on Professor William Oltman's article, *The Implied Termination of Community Property Agreements Upon Permanent Separation*, 14 U. PUGET SOUND L. REV. 53 (1990). However, for the reasons discussed below, we decline to adopt Johnson's approach and imply a termination clause in this case.

The first circumstance under which a CPA may be set aside is as the result of a final dissolution order. A dissolution proceeding's effect on a CPA was analyzed in *Lyman's*, a case factually similar to that presently before us. In 1964, the Lymans executed a CPA and mutual wills, each spouse leaving their respective property to the other. In 1970, after two prior separations, the wife petitioned for dissolution. Shortly afterward, the husband executed a new will (1970 will) naming his wife the executor of his estate, and bequeathing his half community interest in the parties' property to his stepsons. He died soon after executing the 1970 will. *Lyman's*, 7 Wn. App. 946.

On her husband's death, the wife dismissed her dissolution petition and recorded the 1964 CPA, making no effort to probate the 1970 will. A beneficiary of the 1970 will petitioned for its admission to probate over the wife's objections. The trial court found the 1964 CPA was valid and prevailed over the 1970 will. *Lyman's*, 7 Wn. App. 946-47. The 1970 will beneficiary appealed, arguing the CPA had been revoked by the petition for divorce and the inconsistent will. *Lyman's*, 7 Wn. App. at 948.

The Court of Appeals began its analysis by considering the effect a final dissolution decree would have on a CPA that did not include a termination clause. Under RCW 26.09.080, a court has jurisdiction in a pending divorce to regulate, modify, or abrogate the property rights of the parties by final decree. CPAs create contractual rights, which are a form of property because they fix the rights of the spouses upon death. The Court of Appeals concluded, therefore, that a final dissolution decree might cancel a CPA or, that court-ordered division of community property might render a CPA inoperable. *Lyman's*, 7 Wn. App. at 950.

The court next considered what effect, if any, initiating a dissolution proceeding would have on a CPA. Relying on principles of contract interpretation, the court reasoned the intention to submit community property for court disposition "is not the same as an intention to immediately effect an ex parte abandonment of a valuable contractual right." *Lyman's*, 7 Wn. App. at 951. The court held the husband's intent to abandon the CPA through the execution of an inconsistent will was *unilateral*, but that for the abandonment to be effective it must be *mutual*. Notwithstanding the wife's petition for dissolution, the court determined that for the Lyman CPA to have been mutually abandoned, the wife must: (1) know of the inconsistent will and its disposition of the community property, and (2) acquiesce to the community property's disposition. *Lyman's*, 7 Wn. App. at 951. We approved of the rationale and holding of *Lyman's* and adopted it as the opinion of this court. *In re Estate of Lyman*, 82 Wn.2d 693, 693-94, 512 P.2d 1093 (1973).

The second circumstance, under which a CPA may be set aside, results from principles of contract interpretation. We analyzed this circumstance in detail in *Higgins*. After executing a CPA in 1967 (1967 CPA), the spouses executed mutual wills, passing the deceased spouse's community property to the surviving spouse subject to the provisions of a second agreement regarding the disposition of community property (1977 agreement). *Higgins*, 123 Wn.2d at 163. The 1977 agreement made no mention of the 1967 CPA and contained mutual covenants preventing the surviving spouse from disposing of the deceased spouse's one-half interest in the couple's community property by any means other than the disposition identified in the 1977 agreement and the mutual wills. Less than one month after the 1977 agreement and the mutual wills were executed, the wife died. *Higgins*, 123 Wn.2d at 163. Ten years later, the husband executed a new will (1987 will), disposing of the estate in a manner contrary to the 1977 agreement. *Higgins*, 123 Wn.2d at 163-64.

Principles of contract interpretation controlled our *Higgins* analysis. When two contracts are in conflict, the legal effect of a subsequent contract made by the same parties and covering the same subject matter, but containing inconsistent terms, is to rescind the earlier contract. *Higgins*, 123 Wn.2d at 165-66. We examined a number of cases illustrating the application of these principles in conflicts between wills and CPAs and determined a CPA could be rescinded by mutual intent clearly demonstrated through the preparation of mutual wills. *Higgins*, 123 Wn.2d at 166-68. We concluded that objective manifestations of the spouses' intent to terminate a CPA might be found in its language or in the context in which it was executed. Relying upon the parties' mutually expressed intention to abandon the CPA, we held the CPA in *Higgins* had been rescinded. *Higgins*, 123 Wn.2d at 167. In reaching this conclusion, we specifically rejected the approach of unilateral revocation, holding that unilateral acts inconsistent with the CPA do not rescind it. *Higgins*, 123 Wn.2d at 168.

Under the principles of contract interpretation we have applied to CPAs in *Lyman* and *Higgins*, we conclude the Bachmeier CPA was not mutually abandoned either by the initiation of legal separation proceedings or by the execution of an inconsistent will because these acts were unilateral. There is nothing in the record to demonstrate John Bachmeier was aware of Angeline Bachmeier's inconsistent will, much less that he approved its disposition of the community's property. Similarly, the initiation of legal separation proceedings, although evidencing the intention to submit community property for court disposition, does not immediately effect an abandonment of the CPA or automatically result in an equitable disposition of the community property.[1] Our precedents regarding CPAs demonstrate the Bachmeier CPA was valid at the time of Angeline Bachmeier's death and controlled the disposition of her estate.

Johnson argues we should adopt a new approach in our treatment of CPAs. Although the Bachmeier CPA contains no terms specifying the conditions under which it might be revoked, Johnson advances, and the Court of Appeals accepted, Professor Oltman's argument that a husband and wife entering into a CPA would rarely intend for the CPA to remain in effect after the parties separate. Johnson argues we should imply a term to the CPA's execution, which would terminate it should the marriage giving rise to the CPA become defunct. Moreover, Johnson contends termination would be the outcome most parties desired, had the issue been brought to their attention when drafting the CPA. *In re Bachmeier*, 106 Wn. App. 862; Oltman, *supra*, at 66. Bachmeier argues that one spouse might separate from the other but not intend to alter the disposition of community property at death. Bachmeier also contends spouses are

---

[1] In a subsequent motion for injunctive relief to this court, Johnson presented evidence, not included in the record, that Angeline Bachmeier was aware of the legal separation proceedings initiated by John Bachmeier. However, this does not alter our holding because no final decree regarding property had been issued pursuant to RCW 26.09.080.

free to intentionally omit termination clauses and asks us to enforce the CPA as written.

We are not persuaded in this case that there is a principled means of implying a termination clause to end a CPA when the parties' marriage has become defunct. Generally, courts function to enforce contracts as drafted by the parties and not to change the obligations of the contract the parties saw fit to make. 11 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 31:4 (4th ed. 1999 & Supp. 2001). CPAs are unique written contracts intended to pass community property at death. CPAs are more likely to be contested, therefore, after one of the parties has died, when evidence of the spouses' intentions at the time of execution is likely to be scant and one-sided. Given the requirements of a CPA's execution and the conditions under which CPAs are likely to be contested, we are unpersuaded by Johnson's approach.

Implying a term to the CPA's formation, without any evidence supporting the party spouses' intentions at the time, would be speculative. Although some parties might wish the CPA to terminate upon the underlying marriage becoming defunct, it is equally possible that they might not. Similarly, while it is conceivable that some spouses might wish to terminate the entire CPA should their marriage become defunct, it is entirely likely that other spouses might prefer to terminate only the conversion prong. Without evidence of the parties' intentions at execution, we have no foundation upon which we could imply a term contrary to their expressed intention.

In this case, the practical effect of implying a term to the Bachmeier CPA would be to rewrite it nearly 30 years after its formation without consideration for the parties' intentions. This is particularly true here because one of the parties to the CPA has died, and there is no evidence regarding the CPA's formation. The CPA is silent regarding termination, and no later contract or legal proceeding offers guidance in the CPA's interpretation. In this case, the proposed approach would only inject uncertainty into a

contract intended to remove uncertainty from the transfer of community property upon the death of a party spouse.

When a CPA is executed, the express mutual intent of the parties is clear: to convert all current and after-acquired property to community property and to dispose of community property on the death of one of the party spouses. We cannot imply a term to a CPA, contrary to the express intent of the parties, upon mere speculation. In this case, we hold the CPA may not be terminated by implication.

CONCLUSION

We reverse the decision of the Court of Appeals and remand for further proceedings consistent with this opinion.

ALEXANDER, C.J., and SMITH, MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., concur.