FILED
COURT OF APPEALS
DIVISION II

2013 JUL 16 AM 8: 44

STATE OF WASHINGTON

BY_____
DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Marriage of: | No. 42705-2-II |
| MARK WILLIAM STOHR, | |
| Appellant, | |
| and | |
| HEIDI RIE STOHR, | UNPUBLISHED OPINION |
| Respondent. | |

PENOYAR, J. — Mark Stohr appeals the trial court's order modifying his maintenance obligation to Heidi Stohr. He argues that the trial court erred by modifying the maintenance formula in a manner that ultimately increased his maintenance obligation despite the trial court's finding that he had shown a substantial change in circumstances. Because the trial court modified the payments to account for fluctuations in Mark's[1] income, the increase resulted from Mark's own suggestion that the parties split his commissions; and the amounts set are just in light of the parties' long-term marriage and respective financial situations, we affirm. We remand only for the trial court to clarify that the modification ordered only affects payments subsequent to Mark's motion to modify.

### FACTS

On December 31, 2008, the trial court entered a decree dissolving Heidi and Mark's 16-year marriage. At the time of dissolution, Heidi had been out of the work force and was homeschooling one of their children. The initial decree provided that Mark would pay Heidi maintenance through June 2012 and that he would pay child support for their two teenage

---

[1] For clarity, we refer to the Stohrs by their first names.

children. The decree set Mark's yearly gross income at $200,000, or $16,667 per month, and imputed $2,619 in net monthly income to Heidi starting July 1, 2009. The decree fixed payment amounts for each year that payments were required and decreased maintenance payments over time.

In April and May 2009, Mark paid only part of the $6,000 he owed Heidi for maintenance and child support. In May 2009, Mark moved to modify his maintenance obligation and Heidi filed a contempt motion against Mark for the delinquent payments.

The trial court held a hearing on the motion to modify and the contempt motion on July 1, 2009. Mark appeared pro se and argued that his maintenance payments should be reduced because his income was partly based on commission and his sales were down because of the economy. He asked that the court reduce his maintenance payments to $500 per month, and he offered to equally split his commissions with Heidi. The trial court agreed that Mark had shown adequate cause to modify his maintenance payments.

On June 17, 2011,[2] the trial court entered an order modifying maintenance and child support. The trial court entered the order nunc pro tunc to June 5, 2009. The order reduced Mark's imputed gross yearly income from $200,000 to $90,000. This new amount was based on Mark's guaranteed annual salary of $82,500. Mark initially agreed that the $90,000 figure was fair. The order also reduced Heidi's imputed gross monthly income to $2,200. The order then prescribed a new formula for calculating base maintenance payments. The formula required the parties to equally split their monthly incomes after subtracting taxes, which the trial court

---

[2] There was a two-year delay between the initial hearing and the date the trial court entered the final order. Although the trial court issued a letter ruling modifying the maintenance formula on September 25, 2009, the parties argued over the application and interpretation of the ruling, and the trial court subsequently held multiple hearings before entering the final order.

estimated at 15 percent for federal taxes and 9 percent for Oregon state taxes, and child support. The order stated that this amount was nontaxable—meaning Mark could not deduct it and Heidi would not have to claim it as income—because the trial court wanted to keep the parties' incomes "equalized" and it had deducted taxes earlier in the calculation. Clerk's Papers (CP) at 146.

The order also equally divided Mark's gross commissions and provided that these payments were taxable—meaning that Mark could deduct them and Heidi had to claim them as income. Additionally, the order extended maintenance payments through September 2012 to make up for the reduction in the base maintenance payments.

The modified maintenance formula resulted in base maintenance payments that were lower than the payments ordered in the original decree.[3] However, in months where Mark earned large commissions, the modified formula resulted in payments that were greater than the payments ordered in the original decree.

Mark filed a motion for reconsideration, asking the trial court to reconsider its determination that the base payments were nontaxable, to limit maintenance to the amount specified in the original decree, and to reconsider its "determination to equalize income between the parties." CP at 205. The trial court denied his motion for reconsideration, reasoning that the

---

[3] Under the original decree, Mark's maintenance payments were set at $4,725 per month for the first year; $4,900 for the second year; $4,300 for the third year; and $3,200 for the fourth year. Under the order modifying maintenance, Mark's base maintenance payments—those based on his $90,000 imputed income—were set at $2,313 per month through June 2009; $1,800 from July through September 2009; $1,734 from October 2009 through May 2010; $1,472 for June 2010; and $1,666 from July 2010 through September 2012. The fluctuations in payments under the order modifying maintenance are due to changes in child support and taxes after Mark moved to Oregon.

modifications were based on his previous request to accommodate the fluctuations in his income. Mark appeals.

## ANALYSIS

### I.    STANDARD OF REVIEW

We review a trial court's order on a motion to modify to determine if the decision is manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Ochsner*, 47 Wn. App. 520, 524-25, 736 P.2d 292 (1987). The trial court may modify spousal maintenance when a party shows a substantial change in circumstances not within the parties' contemplation when the dissolution decree was entered. *Ochsner*, 47 Wn. App. at 524; RCW 26.09.170(1). "The phrase 'change in circumstances' refers to the financial ability of the obligor spouse to pay vis-à-vis the necessities of the other spouse." *Ochsner*, 47 Wn. App. at 524. Once the trial court finds adequate cause to modify, the issues of amount and duration are the same as for the original decree. *In re Marriage of Spreen*, 107 Wn. App. 341, 347 n.4, 28 P.3d 769 (2001).

RCW 26.09.090(1) provides a nonexhaustive list of factors for the trial court to consider when awarding maintenance:

> (a) The financial resources of the party seeking maintenance . . . ;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
>
> (c) The standard of living established during the marriage . . . ;
>
> (d) The duration of the marriage . . . ;
>
> (e) The age, physical and emotional condition, and financial obligations of the spouse . . . seeking maintenance; and

4

(f) The ability of the spouse . . . from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse . . . seeking maintenance.

RCW 26.09.090(1) requires only that the amount and duration of the maintenance award be just in light of the relevant factors. Maintenance is not merely a means of providing bare necessities; rather, it is a flexible tool by which the parties' standards of living may be equalized for an appropriate period of time. *In re Marriage of Washburn*, 101 Wn.2d 168, 179, 677 P.2d 152 (1984) (citing RCW 26.09.090(1)(c), (d)).

## II. INCREASED MAINTENANCE OBLIGATION

Mark first argues that the trial court erred by ordering a formula that increased his maintenance obligation despite finding that his income was reduced. Because the modification addressed Mark's concern about his fluctuating income and because any increases in the maintenance payments resulted from Mark's own suggestion that he split commissions with Heidi, we hold that the trial court did not err by modifying his maintenance obligation.[4]

The trial court's modification addressed Mark's concern about decreasing sales commissions. Mark's salary was the same at the time he moved to modify the maintenance payments as it was when the trial court entered the original decree. The change in his financial circumstances was due to fluctuations in his sales commissions. The trial court accounted for

---

[4] Heidi argues that we should decline review because Mark has failed to either comply with or stay the order that he challenges on appeal. She cites *Pike v. Pike*, 24 Wn.2d 735, 167 P.2d 401 (1946), to support her contention. This case is inapposite. In *Pike*, the court dismissed the mother's appeal when she failed to comply with the initial custody decree. Although the decree gave custody to the father, the mother fled the state with the children, making execution of the custody portion of the decree impossible. *Pike*, 24 Wn.2d at 737. The court compared the mother's actions to a defendant in a criminal case who fled the jurisdiction while his appeal was pending and dismissed her appeal unless she complied with the order and returned the children to their father. *Pike*, 24 Wn.2d at 742-43. Dismissal is not appropriate here because unlike in *Pike*, Mark did not flee the jurisdiction or make execution of the order impossible; he merely disobeyed the trial court's order.

these fluctuations by separating Mark's commissions from his base salary and calculating the amount of maintenance due for each. The amount of maintenance due under his base salary was less than half the amount due under the original decree. Therefore, if Mark had a month where he did not earn any commissions, he would owe less under the modification order than under the original decree. However, if Mark earned any commissions, he was required to split them equally with Heidi. Although this resulted in maintenance payments for some months that were greater than payments under the original decree, this modification directly resulted from the trial court addressing Mark's concern about his fluctuating income.

Further, as Heidi states in her brief, Mark invited the court to equally split his commissions. The doctrine of invited error prohibits a party from setting up an error at trial and then complaining of it on appeal. *Nania v. Pac. Nw. Bell Tel. Co., Inc.*, 60 Wn. App. 706, 709, 806 P.2d 787 (1991). Mark cannot offer to split his commissions and then complain on appeal after the trial court acts on his offer.

Even if Mark had not offered to split his commissions with Heidi, the trial court's decision was not error. Mark and Heidi had a long-term marriage, during which Heidi left the work force while Mark continued to earn a substantial living. The trial court repeatedly stated that it created the modified formula in an effort to make the payments equitable for both parties. By splitting Mark's commissions, the trial court equalized the parties' standards of living for a few years until Heidi could train and re-enter the work force.

Mark additionally argues that the trial court could not increase maintenance to Heidi absent her proving a substantial change of circumstances. Mark is correct that, under RCW 26.09.170(1)(b), the trial court can modify maintenance "only upon a showing of a substantial change of circumstances." Here, there was a showing of a substantial change of circumstances.

6

The trial court found that Mark had shown adequate cause to modify maintenance. Nothing in the statute requires the trial court to adjust maintenance in favor of the moving party,[5] and Mark fails to provide any authority mandating such a requirement.[6]

III.    ADDITIONAL ERRORS

Mark next argues that the trial court committed additional errors when it (1) counted some commissions twice,[7] (2) used a 15 percent income tax bracket for computing his net income, (3) determined that some of the maintenance was taxable and some was nontaxable, (4) decreased Heidi's imputed income, and (5) failed to provide for a decrease in maintenance payments each year. All of these alleged errors relate to the trial court's method of calculating maintenance. RCW 26.09.090 emphasizes the justness of the result rather than the method of calculating maintenance. *Washburn*, 101 Wn.2d at 182. Here, the award was just. The trial court's comments and findings are important in that they reflect the factors the trial court considered, but they are not to be read like an accountant's balance sheet. The trial court equally divided the parties' incomes and provided a flexible formula that accounted for fluctuations in Mark's sales commissions. Additionally, the award was limited in duration—about four years— balancing Heidi's need to train and her ability to eventually return to the work force.

---

[5] Mark ignores the fact that his modified maintenance obligation for 2009 is less than his obligation under the original decree. Had commissions remained low, the modification could have favored him throughout the maintenance period.

[6] Division One of this court has stated that, once a basis for modification has been established, the trial court may modify the decree in any respect. *In re Marriage of Scanlon and Witrack*, 109 Wn. App. 167, 171, 34 P.3d 877 (2001).

[7] This argument is based on the trial court imputing a base salary to Mark of $90,000 when his actual salary was $82,500. But the trial court was using Mark's imputed salary rather than his actual salary to compute the base maintenance payments. Additionally, Mark agreed that this figure was fair, and the $7,500 difference, which was also subject to division as a commission, was a relatively small adjustment to the trial court's overall formula.

Mark also argues that the trial court erred when it entered the modification order nunc pro tunc to May 2009, which is when he first moved to modify maintenance. Under RCW 26.09.170(1), the trial court may modify maintenance installments accruing subsequent to the petition for modification. "The trial court has discretion to make the modification effective upon the filing of the petition, . . . the date of the order of modification, or any time in between." *In re Marriage of Pollard*, 99 Wn. App. 48, 55, 991 P.2d 1201 (2000). Mark filed a petition to modify maintenance on May 8, 2009. The trial court dated the order nunc pro tunc to June 5, 2009; however, the order also states that the modification is effective starting May 1, 2009. The trial court had discretion to modify maintenance payments subsequent to Mark filing his petition for modification on May 8. Therefore, the trial court erred by ordering that the modification was effective starting May 1. We remand for the trial court to order an effective date no earlier than May 8, 2009.

IV.   ATTORNEY FEES

Heidi requests attorney fees under RCW 26.09.140 and RAP 18.1. We have discretion to order a party to pay for the cost of maintaining the appeal and attorney fees in addition to statutory costs. RCW 26.09.140. When awarding attorney fees, we examine the arguable merit of the issues and the parties' financial resources. *In re Marriage of Griffin*, 114 Wn.2d 772, 779, 791 P.2d 519 (1990). In order to receive attorney fees, the parties must file financial affidavits with the court no later than 10 days before oral argument. RAP 18.1(c). Here, Heidi's arguments have merit, and she timely filed a financial affidavit stating that her average gross monthly income is $2,310—not including support payments—and her total monthly expenses are $6,757. Mark has not submitted an affidavit challenging Heidi's need or his ability to pay. *See In re Marriage of Fox*, 58 Wn. App. 935, 940, 795 P.2d 1170 (1990) (awarding attorney fees on

appeal where one party demonstrated a need and the other party fails to submit a contravening affidavit). We therefore award Heidi attorney fees and costs under RCW 26.09.140.

We affirm and remand only for the trial court to clarify that the modification ordered only affects payments subsequent to Mark's motion to modify.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.

We concur:

Worswick, C.J.

Bjorgen, J.