# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Estate of:<br><br>RONALD LARSON,<br><br>                      Deceased. | No.59186-3-II |
| RONDA LARSON KRAMER and DANA LARSON,<br><br>                      Appellants,<br><br>     v.<br><br>JUDY LARSON, individually and as Personal Representative of the Estate of Ronald David Larson,<br><br>                      Respondent. | UNPUBLISHED OPINION |

MAXA, J. – Ronda Larson Kramer and Dana Larson appeal the trial court's grant of

partial summary judgment in favor of their late father Ron Larson's wife, Judy Larson.

When Ron[1] and Judy married in 1994, Ron had two children and Judy had three children

from prior marriages. They each had significant separate assets. Before they were married, Ron

and Judy signed a prenuptial agreement. Paragraph 10 of the agreement stated that Ron agreed

---

[1] For clarity we use first names to distinguish between the multiple parties with the name
Larson. No disrespect is intended.

to execute a will providing that Judy would be entitled to receive the income from certain of his separate property for the remainder of her life. The agreement also stated that Judy agreed to execute a will providing that Ron would be entitled to receive the income from certain of her separate property for the remainder of his life. The agreement further stated that it could be amended or revoked only by a written agreement signed by both parties. Ron and Judy amended the agreement three times to change the separate property itemized in the agreement.

In 1997, Ron executed a will in which he directed that if Judy survived him, certain items of his separate property would be placed in a marital trust. The will provided that Judy would be entitled to the income from the trust for the remainder of her life. Upon Judy's death, the property in the marital trust would be distributed to his two children.

In 2017, Ron and Judy each signed separate wills that revoked all prior wills. Ron's will did not provide that Judy would be entitled to receive the income from certain of his separate property for the remainder of her life, but instead left all of his separate property to Dana and Ronda. Similarly, Judy's will did not provide that Ron would be entitled to receive the income from certain of her separate property for the remainder of his life, but instead left all of her separate property to her children.

After Ron died, Judy – as executor of Ron's estate – determined that she was entitled to receive the income from Ron's separate property listed in the prenuptial agreement and subsequent amendments rather than distributing that separate property to Ronda and Dana as provided in Ron's 2017 will. Ronda and Dana sued, arguing that the 2017 wills executed by both Ron and Judy either rescinded or mutually abandoned paragraph 10 of the prenuptial agreement. The trial court denied Ronda and Dana's summary judgment motion and granted summary judgment in favor of Judy.

2

We note that both Ron and Judy breached paragraph 10 of the prenuptial agreement when they executed the 2017 wills without providing that the other would be entitled to the income from the specified separate property. As a result, we conclude that they mutually abandoned paragraph 10 of the prenuptial agreement. This means that Ron's will – which distributed all of his separate property to Ronda and Dana – must be enforced and Judy is not entitled to receive income from the property specified in the prenuptial agreement and amendments.

Accordingly, we reverse the trial court's denial of Ronda and Dana's motion for partial summary judgment and grant of partial summary judgment in favor of Judy, and we remand for the trial court to grant partial summary judgment in favor of Ronda and Dana on this issue.

FACTS

*Prenuptial Agreement and 1997 Will*

In June 1994 Ron and Judy entered into a prenuptial agreement. In attached schedules, Ron and Judy listed their separate property. Paragraph 10 of the agreement was entitled, "Agreement to Make a Will." Clerk's Papers (CP) at 57. In paragraph 10, Ron and Judy agreed to execute wills in which each would provide income for the other. Specifically, the agreement stated:

> a. <u>Ron's Will.</u> Ron agrees to provide that Judy shall have the income from the following assets for the remainder of her life:
> (1) Profit sharing account in the profit sharing trust of Ronald Larson, DDS, PS;
> (2) Vanguard Group IRA, account no. [ending in] 7515;
> (3) Dean Witter Trust Company account no. [ending in] 4-002.
> Additionally, Ron shall leave Judy his interest in their home.

CP at 57. The agreement contained a similar provision in which Judy agreed to provide income to Ron from certain of her separate property for the remainder of his life.

The prenuptial agreement stated that it was binding on the parties and on their respective heirs. Paragraph 21 of the agreement also stated that it "may only be amended or revoked by a written agreement signed by both parties." CP at 60.

Ron and Judy married in 1994. In 1997, Ron executed a will that expressly incorporated the 1994 prenuptial agreement. The will provided that all community property would be distributed to Judy. The will also created a marital trust for the benefit of Judy, under which she was entitled to receive the income from four of Ron's separate property assets for the remainder of her life. Upon Judy's death, the property in the marital trust would be distributed to his children. The residue of Ron's estate also would be distributed to his children.[2]

On the same day that Ron executed his 1997 will, Ron and Judy signed an agreement amending their prenuptial agreement. The amendment stated that Ron agreed to provide in his will that Judy would receive the income from four specified assets for the remainder of her life. The four assets matched the four assets listed in marital trust provision of the 1997 will.

In 2001, Ron and Judy again amended their prenuptial agreement. The 2001 amendment states:

> With regard to subparagraph a. of paragraph 10. found on page 6, it is deleted in its entirety and the following is substituted in its place:
> a. Ron's Will. Ron agrees to provide that Judy shall have the income from the following assets for the remainder of her life:
> (1) the office building located at 1212 E. 4th, Olympia Washington;
> (2) the duplex at 1200 and 1202 Chestnut, Olympia, Washington;
> (3) Vanguard Account Nos. [ending in] 8686, 7515, 8686 and 8963.

CP at 67.

---

[2] The assumption is that Judy executed a similar will in 1997, but her will is not in the record.

Ron and Judy once again amended the prenuptial agreement in 2007 in a handwritten document to change Judy's separate property assets from which Ron would be entitled to receive income for the remainder of his life.

*2017 Wills*

In February 2017, Ron and Judy each executed separate wills. Neither will mentioned the prenuptial agreement.

Ron devised his separate property equally to Dana and Ronda. He left the residue of his estate to Judy in trust. Upon Judy's death or if Judy did not survive him, the remainder of the trust estate would be equally distributed between Dana, Ronda, and Judy's three children.

Judy executed an almost identical will. She devised her separate property equally to her three children. She left the residue of her estate to Ron in trust. Upon Ron's death or if Ron did not survive her, the remainder of the trust estate would be equally distributed between her three children, Dana, and Ronda.

Both wills state that they were neither mutual nor reciprocal. Section 12 of each will stated,

> Although it is my understanding that my spouse is or may be executing a Last Will at or about the time of the execution of this document, it is not my nor our intention that such Wills be construed or deemed to be mutual, reciprocal, or dependent one upon the other, and such Wills are not executed pursuant to any contract or agreement.

CP at 101, 112.

Ron and Judy went together to the same attorney to have their wills redone. Their 2017 wills were signed on the same day and were witnessed by the same two people.

*Procedural History*

Ron died in August 2022. Judy admitted Ron's will to probate, and Judy was appointed personal representative of his estate. Dana and Ronda submitted a creditor claim stating that

5

they should receive the office building, duplex, and Vanguard accounts named in the 2001 amendment to the prenuptial agreement. They alleged that Judy improperly transferred the funds to herself, or alternatively that Ron failed to update his beneficiaries on the accounts before his death. Their total claim exceeded $1.5 million. Judy, in her capacity as personal representative of the estate, rejected the creditor claim.

Dana and Ronda subsequently filed suit under the Trust and Estates Dispute Resolution Act (TEDRA), chapter 11.96A RCW. The trial court consolidated the probate of Ron's estate and the TEDRA claims.

Dana and Ronda moved for partial summary judgment on their TEDRA claim. They argued that Ron 's 2017 will specifically devised his separate property to them, and that Ron's and Judy's 2017 wills were an abandonment, modification, or rescission of the inconsistent terms in the 1994 prenuptial agreement (including its 2001 amendment).

Judy cross-moved for partial summary judgment. She argued that Ron's and her wills did not rescind the prenuptial agreement, as there was no meeting of the minds between Ron and Judy to do so with their respective wills. She argued that the wills were non-mutual and not reciprocal, and accordingly could not rescind the prenuptial agreement.

Judy supported her cross-motion for partial summary judgment with two declarations. First, Judy submitted her own declaration. Her declaration described both her and Ron's process of creating the prenuptial agreement and their wills, including how they came to their agreement of separate and community property in their prenuptial agreement. Dana and Ronda objected to Judy's declaration as hearsay and a violation of the Deadman's statute, RCW 5.60.030.

Second, Judy submitted a declaration from Kimberly Stairitis, a paralegal in her attorney's office. Stairitis attested to the value of various Vanguard accounts, including that the

6

value of real property in the prenuptial agreement that was moved to the Vanguard account at issue in this case. The declaration also identified certain property from which Judy was to live off the income. Dana and Ronda objected to Stairitis's declaration on the basis of a lack of personal knowledge.

The trial court denied Dana and Ronda's summary judgment motion and granted Judy's summary judgment motion. In its oral ruling, the court stated that Ron's and Judy's 2017 wills did not constitute a written contract between the spouses to rescind the prenuptial agreement. The court stated that it did not need to rely on extrinsic evidence for its ruling. The trial court subsequently denied Dana and Ronda's motion for reconsideration.

The court found that disposition of Dana and Ronda's TEDRA claims would not impact other pending issues and that an immediate appeal would not delay trial. The court also found that the amount of money at issue and lack of delay weighed in favor of allowing an immediate appeal.

Dana and Ronda appeal the trial court's denial of their motion for partial summary judgment and grant of partial summary judgment in favor of Judy.

## ANALYSIS

A. CONTINUED VALIDITY OF PRENUPTIAL AGREEMENT

Ronda and Dana argue that the trial court erred in granting partial summary judgment to Judy because Ron and Judy's 2017 wills reflected a mutual abandonment of paragraph 10 of the prenuptial agreement. We agree.

1. Standard of Review

We review a trial court's decision on a summary judgment motion de novo. *Mihaila v. Troth*, 21 Wn. App. 2d 227, 231, 505 P.3d 163 (2022). Summary judgment is appropriate only if

7

there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; CR 56(c). But summary judgment can be determined as a matter of law if the material facts are not in dispute. *Protective Admin. Servs., Inc. v. Dep't of Revenue*, 24 Wn. App. 2d 319, 325, 519 P.3d 953 (2022).

2.    Evidentiary Issues

Dana and Ronda argue that the trial court erred in not striking (1) portions of Judy's declaration in violation of the Deadman's statute, RCW 5.60.030; and (2) Stairitis's declaration because it was hearsay and not based on personal knowledge. However, our analysis does not depend on consideration of these declarations. Therefore, we do not address the evidentiary issues.

3.    Legal Principles

Prenuptial agreements are contracts subject to the principles of contract law. *Kellar v. Est. of Kellar*, 172 Wn. App. 562, 584, 291 P.3d 906 (2012). Contract interpretation is a question of law when the interpretation does not depend on the use of extrinsic evidence. *Raab v. Nu Skin Enters., Inc.*, 28 Wn. App. 2d 365, 389, 536 P.3d 695 (2023), *review denied,* 2 Wn.3d 1022 (2024). "The primary objective in contract interpretation is to ascertain the mutual intent of the parties at the time they executed the contract." *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 712, 334 P.3d 116 (2014). The focus is on determining the parties' intent based on the reasonable meaning of the contract language. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005).

A prenuptial agreement will not be enforced if the evidence shows that the parties had a mutual intent to abandon the agreement. *In re Marriage of Fox*, 58 Wn. App. 935, 938, 795 P.2d 1170 (1990). "The burden is upon the spouse seeking to enforce such an agreement to show it

has been strictly observed in good faith." *Id.*; *see also In re Marriage of Sanchez*, 33 Wn. App. 215, 218, 654 P.2d 702 (1982).

This general rule has been recognized more often in cases involving the execution of a will that is inconsistent with a prior community property agreement or separate property agreement. *E.g.*, *In re Estate of Bachmeier*, 147 Wn.2d 60, 65-66, 52 P.3d 22 (2002) (stating that a community property agreement can be abandoned by the execution of an inconsistent will if both spouses have mutual intent to abandon); *Higgins v. Stafford*, 123 Wn.2d 160, 172, 866 P.2d 31 (1994) ("We hold a community property agreement may be rescinded or abandoned by mutual intent clearly demonstrated."); *In re Estate of Lyman*, 7 Wn. App. 945, 948-49, 503 P.2d 1127 (1972), *aff'd*, 82 Wn.2d 693, 512 P.2d 1093 (1973) ("Conduct manifesting an intention to abandon a contract is sufficient if the conduct of one party is inconsistent with the continued existence of the contract and that conduct is known to and acquiesced in by the other.").

In *Higgins*, spouses executed a community property agreement stating that upon the death of either, all community property would pass to the survivor. 123 Wn.2d at 161. Ten years later, the spouses executed a second agreement that prevented the survivor from disposing of the deceased's share of community property by means other than stated in mutual wills that the spouses executed at the same time. *Id.* at 162-63. The issue presented was whether the later agreement and mutual wills rescinded the community property agreement. *Id.* at 164.

The court discussed several cases, including *Lyman*, and stated, "These cases establish that mutual intent to rescind a community property agreement must be demonstrated; unilateral acts inconsistent with the agreement are not enough. However, intent need not be expressly stated. Mutual acts having the effect of rescinding the agreement are sufficient." *Id.* at 168. The

9

court concluded that the later agreement and the mutual wills were "sufficient as a matter of law to establish an intent to abandon or rescind the community property agreement." *Id.* at 169.

In *Bachmeier*, spouses executed a community property agreement stating that upon the death of either, all community property would pass to the survivor. 147 Wn.2d at 62-63. The husband subsequently filed a petition for legal separation from his wife. *Id.* at 63. The wife later executed a will leaving her residual estate to her daughter and expressly disinheriting her husband. *Id.* After the wife died, the issue was whether the community property agreement or the will controlled. *Id.*

The court noted the holding in *Higgins* that "a [community property agreement] could be rescinded by mutual intent clearly demonstrated through the preparation of mutual wills." *Id.* at 66. However, the court held that the wife's execution of an inconsistent will did not constitute an abandonment of the community property agreement in that case because the wife's act was unilateral, not mutual. *Id.* at 67.

5. Analysis

Here, when Ron and Judy executed their 2017 wills, they both breached their agreements in paragraph 10 of the prenuptial agreement. Ron did not provide in his new will that Judy was entitled to receive the income from certain of his separate property for the remainder of her life as he agreed to do in paragraph 10. And Judy did not provide in her new will that Ron was entitled to receive the income from certain of her separate property for the remainder of his life as she agreed to do in paragraph 10. By this action, Ron and Judy both demonstrated an intent to abandon their obligations under paragraph 10 of the prenuptial agreement.

Judy argues that there was no meeting of the minds to abandon Paragraph 10. But the evidence shows Ron's and Judy's intent was mutual rather than unilateral. Judy is correct that

she and Ron did not execute mutual wills as in *Higgins*. But neither were the execution of their wills unilateral acts as in *Bachmeier*. Ron and Judy went together to have their wills redone, and their wills were drafted by the same attorney. The will provisions are almost identical, particularly in that both Ron and Judy left all of their separate property to their respective children. The wills were signed on the same day and were witnessed by the same two people. These facts establish that Ron and Judy knew that the other was breaching paragraph 10 and acquiesced in that breach.

Judy argues that paragraph 10 of the prenuptial agreement should be enforced because the agreement was never revoked in writing as required in paragraph 21 of the agreement. She appears to imply that paragraph 10 of the prenuptial agreement *automatically* entitled her to receive the income from certain of Ron's separate property asserts for the remainder of her life. That is not accurate. Paragraph 10 states only that Ron *agreed to provide in his will* that Judy would receive certain income. Ron did not provide income for Judy from his separate property in his 2017 will, and now Ron is deceased. Therefore, Ron's agreement in paragraph 10 no longer can be enforced regardless of whether the prenuptial agreement was revoked.

We conclude that Ron and Judy mutually abandoned paragraph 10 of the prenuptial agreement when they both drafted new wills that breached their agreements in paragraph 10. Therefore, we hold that the trial court erred in denying Ronda and Dana's motion for partial summary judgment and granting partial summary judgment in favor of Judy.

B.      ATTORNEY FEES ON APPEAL

Both parties request attorney fees under TEDRA's fee provision, RCW 11.96A.150. RCW 11.96A.150(1) states that "[e]ither the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party." RCW

No.59186-3-II

11.96A.150(1) permits the court to order costs from any party to a proceeding, from the assets of an estate, or from any nonprobate asset that is the subject of a TEDRA proceeding. The statute further states,

> The court may order the costs, including reasonable attorneys' fees, *to be paid in such amount and in such manner as the court determines to be equitable*. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

RCW 11.96A.150(1) (emphasis added).

Here, Ronda and Dana are the prevailing parties on appeal. However, this case involved a bona fide question as to the interplay between the prenuptial agreement and Ron's 2017 will. Accordingly, we believe that it is equitable to award attorney fees to Ronda and Dana in the amount of $5,000, to be paid by Judy.

## CONCLUSION

We reverse the trial court's denial of Ronda and Dana's motion for partial summary judgment and grant of partial summary judgment in favor of Judy, and we remand for the trial court to grant partial summary judgment in favor of Ronda and Dana on this issue.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

CRUSER, C.J.

CHE, J.

12