106 P.3d 768 (2005)
In re the Marriage of Cindy L. MANSOUR, Appellant,
v.
Ghassan N. MANSOUR, Respondent.
No. 53206-5-I.
Court of Appeals of Washington, Division 1.
December 27, 2004.
Publication Ordered and Reconsideration Denied February 10, 2005.
*770 Jordan Gross, Yarmuth, Wilsdon, Calfo PLLC, Seattle, WA, for Appellant.
G. Geoffrey Gibbs, Attorney at Law, Everett, WA, Michael Barr King, Lane Powell PC, Seattle, WA, for Respondent.
BAKER, J.
Cindy Mansour (the "wife" or "mother") appeals a final parenting plan, order of support, decree of dissolution, and findings of fact and conclusions of law entered by the trial court following a three-day trial. She claims that the trial court erred by not including in the parenting plan statutorily-required limitations applicable to her former husband, Ghassan Mansour (the "husband" or "father"), because he physically abused their son. She also claims that the court erred in its decisions regarding child support, spousal maintenance, property division, and award of attorney fees.
Because substantial evidence supports the finding that the father had physically abused the parties' son, we reverse the trial court's parenting plan and remand to the trial court to follow the requirements of RCW 26.09.191(1) and (2). We also agree with the wife that the court erred by placing a financial veto on her sole decision-making authority, and direct the trial court to reconsider that provision. We find no error in the court's decision to allow both parents' influence on the son's religious upbringing.
We also remand the financial determinations back to the trial court because of error in its calculation of the husband's income and distribution of the assets. Finally, we award attorney fees to the wife on appeal.

I.
In August 2002, Cindy Mansour petitioned for dissolution of her marriage to Ghassan *771 Mansour. Later, the trial court appointed a guardian ad litem (GAL) on behalf of their son.
The GAL conducted interviews with the parents, their son's therapist  Robert Vick, and other family members and professionals. In her reports, the GAL concluded that the father's disciplining of the son rose to the level of physical abuse. She also opined that the abuse "primarily occurred because of the father's significant lack of parenting skills and perhaps his volatile temper rather than an intention to harm his child."
The trial court incorporated the final parenting plan as part of its findings of fact and conclusions of law. The court accepted the GAL's observation that the father's discipline rose to the level of physical abuse, but the court specifically found that subsections (1) and (2) of RCW 26.09.191 did not apply. Instead, the court listed the abuse as a factor to be considered under RCW 26.09.191(3).
The court awarded sole decision-making authority to the mother for education and non-emergency health related matters, but the court required the mother to consult with the father if the decision would require "additional" or "significant" expense. The court gave day-to-day decision-making and religious upbringing authority to both parents. The father is Muslim and the mother is Christian. The court also devised a residential schedule that awarded ample unsupervised visitation with both parents.
With regard to financial matters, the court determined the father's child support obligation to be $578 per month based on an income of $4,000/month for the father, a monthly income below what was reported by the father and alleged by the mother. The court also decided to award as spousal maintenance to the wife, mortgage payments until the house sold, plus two months of $1,500 each for relocation expenses. The court divided the marital assets 55 percent to the wife and 45 percent to the husband. Finally, the court declined to award attorney fees.
On appeal, both parties move to admit additional evidence.

II.
Before considering the merits of the appeal, we address the parties' motions to admit additional evidence. The wife moves under RAP 9.11 to admit a declaration and supporting documents that disclose that the Mansours sold their house for $168,468.64. The husband agrees that this evidence should be admitted, but counters with a motion to admit other additional evidence. The husband moves to admit a letter from the husband's attorney to the wife's attorney outlining the proposed distribution of funds from the sale of the home, a letter from the wife's attorney to the husband's attorney agreeing to the proposed distribution with a holdback of funds of $5,000 from each party's share, and the trial court's order dealing with the holdback.
RAP 9.11 states that:
The appellate court may direct that additional evidence on the merits of the case be taken before the decision of a case on review if: (1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.[[1]]
Because the court's decisions regarding distribution of property, spousal maintenance, and attorney fees are based in part on the amount realized from the sale of the house, we conclude that the evidence offered by the wife complies with the requirements of RAP 9.11 and order its admission. We deny the husband's motion, because the additional evidence he offers is relevant to disputes more appropriately decided by the trial court on remand.
*772 The wife challenges several of the trial court's decisions in the final parenting plan. The applicable standard of review is abuse of discretion. A trial court abuses its discretion when "its decision is based on untenable grounds or reasons, or is manifestly unreasonable."[2] A court's decision is based on untenable grounds or reasons "if its factual findings are unsupported by the record ... [or] if it has used an incorrect standard, or the facts do not meet the requirements of the correct standard...."[3] Moreover, a court "acts unreasonably if its decision is outside the range of acceptable choices given the facts and the legal standard."[4]
The wife argues that the trial court erred by not further limiting the father's influence on decision-making and his residential time. RCW 26.09.191 in pertinent part states:
(1) The permanent parenting plan shall not require mutual decision-making or designation of a dispute resolution process other than court action if it is found that a parent has engaged in ... (b) physical ... abuse of a child....
(2)(a) The parent's residential time with the child shall be limited if it is found that the parent has engaged in ... (ii) physical ... abuse of a child....
(3) A parent's involvement or conduct may have an adverse effect on the child's best interests, and the court may preclude or limit any provisions of the parenting plan, if any of the following factors exist:
...
(g) Such other factors or conduct as the court expressly finds adverse to the best interests of the child.[[5]]
The court made two rulings that indicate it was following the dictates of RCW 26.09.191(1), which directs certain decisions to be made once a finding of abuse has been made. First, the court ordered that "[s]ole decision-making shall be ordered to the mother inasmuch as the Court found there has been abuse by the father." Second, the court did not designate a dispute resolution process. But the court also wrote "Does not apply" in the "Parental Conduct (RCW 26.09.191(1), (2))" section  a conclusion that is inconsistent with a finding of abuse.
The court's reasoning may be found in the section labeled "Other Factors (RCW 26.09.191(3))," where the court explained that it did "believe there was abusive behavior by the father during the course of the marriage to [his son] with the use of the belt." Clearly the court made a finding of abuse, but instead of following RCW 26.09.191(1) and (2), the court utilized RCW 26.09.191(3).
Substantial evidence supports the court's finding that the father physically abused his son. The GAL opined that the husband's "discipline or hitting [his son rose] to the level of physical abuse...." Moreover, the son's therapist stated in a telephone interview with the GAL that the boy "present[ed] as a child who has been physically abused or has witnessed a lot of domestic violence." Also, the son acknowledged "to both his therapist and the GAL that his father hit him with the belt."
The father argues that because neither parent was exemplary, the court did not have to apply RCW 26.09.191(1) and (2), but no authority is offered to support his argument. Moreover, the court made no finding that the mother abused their son. The father argues that the mother engaged in alienation of the child from the father, but that transgression is not mentioned in RCW 26.09.191(1) or (2).
The father further argues that the court was merely looking out for the best interest of the child. He notes that the GAL opined and later the court found that his actions stemmed from a lack of parenting skills and *773 that he had taken action to improve those skills. He also notes that the court stated in its oral ruling that "[b]oth parents have good intentions toward their child...."
But RCW 26.09.191 is unequivocal. Once the court finds that a parent engaged in physical abuse, it must not require mutual decision-making and it must limit the abusive parent's residential time with the child.[6] If the court is concerned about the harshness of the limitations required by RCW 26.09.191(2)(a) and their effect on the best interest of the child, in an appropriate case it may apply subsections (2)(m) and (2)(n) to temper the limitations. But the court must first conclude that RCW 26.09.191(2) applies, and then make specific findings that justify any modification of the limitations.
The trial court erred by failing to follow the dictates of RCW 26.09.191(1) and (2). We reverse and remand to the trial court with directions to follow the statutorily-mandated procedures.
Because the record indicates the potential for progress by the father in his efforts to improve his parenting skills, the trial court is free to hear additional evidence relevant to a possible application of RCW 26.09.191(2)(m) and (n).
The mother also argues that the court erred by giving too much decision-making authority to the father. Under RCW 26.09.191(1), once there is a finding of physical abuse, the court shall not require mutual decision-making. Moreover, under RCW 26.09.187(2)(b)(i), the court shall order sole decision-making authority to one parent when it limits the other parent's authority under RCW 26.09.191.
Although the court ordered sole decision-making authority to the mother in matters of education and non-emergency health care, it also ordered that she was not entitled to commit the child to extracurricular activities that would interfere with the father's residential time, or incur additional expense, absent agreement of the parties or court order. The court further ordered the same for non-emergency health care that would involve significant expense.
The proviso protecting the father's residential time is logical and makes the paragraph consistent with other clauses in the plan. But the father's financial veto substantially diminishes the mother's decision-making authority in violation of RCW 26.09.187(2)(b)(i), converting her authority to decide into an authority to propose.
The father argues that if there is a conflict, the mother simply needs to go to court. But it is not her burden to justify her decisions by seeking court approval. The Legislature designed a system whereby sole decision-making is granted to the parent that has not committed physical abuse. Therefore, if the parent who has committed abuse wants to challenge a decision, it is his responsibility to go to court.
The trial court was correct to anticipate the potential impact of these decisions upon the financial well-being of the parties, and thus the best interest of the child. But that concern may be alleviated by requiring that the mother give sufficient notice to the father of decisions that would incur significant costs, e.g., orthodontia or private school, so the father is able to seek timely court intervention if he chooses.
The mother also argues that the court erred by providing that each parent will have an equal right to include the child in his or her religious activities. To justify a restriction on the influence of a parent upon his/her child's religious upbringing, our courts have applied a separate standard: there must be a substantial showing of actual or potential harm to the child from the parent's influence.[7] No evidence on the record establishes the actual or potential harm of the father's influence on the child's religious upbringing; therefore, no restriction is justified and the court committed no error.
The mother argues that because the court ordered the child to reside with the father on two Islamic religious holidays and to reside with her on Easter, a Christian holiday, the *774 child should be with her on Christmas, another Christian holiday. But because the mother offers no authority that the court must make its decisions regarding visitation based on religious holiday celebrations or that the best interest of the child will be accomplished by using such standard, we conclude the court did not abuse its discretion.
The mother argues that the trial court erred by limiting both parents' ability to volunteer at their son's school to once a month. She argues that because the father has spent excessive time at the school and she has not, any restriction upon her time at school is not justified. But she offers no authority that the trial court must base its decision to limit the time each parent volunteers at school on a specific finding of fault. Accordingly, we find no abuse of discretion.
The mother argues that the trial court erred in calculating the father's income for the purpose of determining his child support obligation. To overturn the child support award, this court must find the trial court abused its discretion.[8] We will not substitute our judgment for "that of the trial court where the record shows that the trial court considered all relevant factors and the award is not unreasonable under the circumstances, nor will we disturb factual findings if supported by substantial evidence."[9] Also, "[t]he trial court's credibility findings are not subject to review on appeal."[10]
The mother argues that the court erred by calculating the father's child support obligation based on a monthly income of $4,000. In his financial declaration, the father reported a net monthly income of $4,664, whereas the mother alleged that he earned $5,443.
During its oral ruling, the court explained that "it has been very difficult to determine what the income of Mr. Mansour is." The court further explained that it reviewed tax returns and various exhibits. Based on an admission by the husband during testimony, the court noted that "[i]t's clear that the tax returns submitted by Mr. Mansour are not a correct measure of the income of Mr. Mansour, that there have been tax deductions taken which Mr. Mansour is not entitled to." The court then concluded: "For that reason, the Court believes that the best measure the Court can make of Mr. Mansour's income is based upon his work and the last three years as a real estate agent is a net of $4,000 a month after taxes, so I will fix his income in that amount."
Although the court referred to reviewing the father's income tax returns that are in the exhibits, as well as to other exhibits, it is not clear from the record how it reached its decision.
We note nothing in the record to support the finding of an income for the father as low as $4,000 per month. Because we are unable to review the trial court's determination of the father's income without further information, we remand to allow the trial court to specify the basis for its determination of income.
The wife argues that the trial court erred in determining the distribution of assets, the amount of spousal maintenance, and the award of attorney fees. We review each of these issues for an abuse of discretion.[11]
A trial court is not required to divide community property equally.[12] Under RCW 26.09.080, the court need only "make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors...."[13]
The wife argues that the trial court erred during the division of assets when the *775 trial court counted $10,141 as an asset assignable to her. She explains that she withdrew the $10,141 from a CD and used $5,000 for a retainer for her attorney, a little over $2,000 for an educational CD for her son, and put the remainder in her checking account to pay bills. She notes that the trial court also attributed the educational CD and the value of the checking account to her, essentially double-counting $5,000. She also complains that while the court counted her withdrawal in the property division, it did not do the same for $21,163 withdrawn from the same CD by the husband.
The husband replies that the difference between his withdrawals and hers is that he received permission from the court to make the withdrawals to pay costs incurred during litigation, such as the fees for psychological examinations and a GAL for the son. But he offers no authority that a court order allowing withdrawals affects the way a trial court calculates assets in the distribution process. Although the trial court has broad discretion in the distribution of assets and is not obliged to distribute those assets evenly, it must calculate the assets fairly. The trial court's different treatment of each party's withdrawal is not sufficiently explained in the court's findings.
Moreover, the husband offered no evidence to counter the wife's assertion that $5,000 of the $10,141 was double-counted by the court. The record indicates that the court attributed to the wife a $2,000 CD that could be the educational CD, the value of the checking account, and the $10,141 withdrawal.
Therefore, we reverse and remand to the trial court to reconsider its distribution of the assets. Withdrawals by either party should be treated consistently, and the court should eliminate any overlaps that occurred in its calculations. Because the asset valuation directly affects how the court distributes the assets, the court may wish to reconsider that allocation.
The wife also argues that the court erred in deciding the spousal maintenance award. For maintenance, the court awarded to the wife mortgage payments until the sale of the house and two months of $1,500/month relocation expenses. The trial court has the power "to award maintenance to either party after the court properly considers all the statutory factors relevant to such a decision."[14] RCW 26.09.090 requires the trial court to consider, but not limit itself to the following factors:
(a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;
(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his skill, interests, style of life, and other attendant circumstances;
(c) The standard of living established during the marriage;
(d) The duration of the marriage;
(e) The age, physical and emotional condition, and financial obligations of the spouse seeking maintenance; and
(f) The ability of the spouse from whom maintenance is sought to meet his needs and financial obligations while meeting those of the spouse seeking maintenance.[[15]]
The wife argues that the court did not consider the standard of living enjoyed by the family before the dissolution, did not equalize the postdissolution economic conditions, and did not adequately provide for the wife's living expenses while she pursued suitable employment. Nothing in RCW 26.09.090 requires the trial court to make specific factual findings on each of the factors listed in RCW 26.09.090(1). The statute merely requires the court to consider the listed factors. Despite the court's failure to list the influence of each factor in its ruling, we find no basis for reversing the maintenance award for lack of consideration of the listed factors.
*776 In In re Marriage of Sheffer,[16] this court held that "where, as here, the disparity in earning power and potential is great, this court must closely examine the maintenance award to see whether it is equitable in light of the postdissolution economic situations of the parties."[17] The trial court indicated its consideration for the parties' postdissolution economic conditions and the wife's living expenses while she pursued suitable employment when it acknowledged that the wife would need some time to find employment and she would not earn "anywhere near" the same amount as the husband. But despite this consideration, the court decided against an award of spousal maintenance because the wife was to receive assets from the sale of the home. On these grounds, we find no abuse of discretion.
The wife also argues that the trial court erred by refusing to award her attorney fees. Before awarding fees, "[t]he trial court must balance the needs of the spouse requesting them with the ability of the other spouse to pay."[18] The trial court considered the disparity in income, but noted that the wife was receiving proceeds from the sale of the house and would be in a position to pay her fees. In this regard, the court committed no error.
The court is free on remand to reconsider its decisions regarding spousal maintenance and attorney fees, because a redetermination of the income assigned to the husband, as well as reconsideration of the distribution of assets, may cause a change in the calculations upon which the trial court relied to decide spousal maintenance and attorney fees.
Finally, the wife requests attorney fees on appeal under RCW 26.09.140 and RAP 18.1. To award attorney fees on appeal, we "examine the arguable merit of the issues on appeal and the financial resources of the respective parties."[19] The wife has complied with RAP 18.1(b) by presenting argument with merit, properly requesting fees in her brief, and filing an affidavit of financial need at least 10 days before argument. Based on her affidavit and because the husband did not counter with an affidavit proving inability to pay,[20] we grant the wife's request for attorney fees and set the matter before a commissioner of this court for a determination of the appropriate amount.
REVERSED in part and REMANDED, AFFIRMED in part.
WE CONCUR: AGID and KENNEDY, JJ.
NOTES
[1] RAP 9.11.
[2] In re Marriage of Wicklund, 84 Wash.App. 763, 770 n. 1, 932 P.2d 652 (1996) (citing In re Marriage of Kovacs, 121 Wash.2d 795, 801, 854 P.2d 629 (1993)).
[3] Wicklund, 84 Wash.App. at 770 n. 1, 932 P.2d 652 (citing State v. Rundquist, 79 Wash.App. 786, 793, 905 P.2d 922 (1995)).
[4] Wicklund, 84 Wash.App. at 770 n. 1, 932 P.2d 652 (citing Rundquist, 79 Wash.App. at 793, 905 P.2d 922).
[5] RCW 26.09.191.
[6] RCW 26.09.191(1), (2).
[7] In re Marriage of Jensen-Branch, 78 Wash.App. 482, 490-91, 899 P.2d 803 (1995).
[8] In re Paternity of Hewitt, 98 Wash.App. 85, 87-88, 988 P.2d 496 (1999).
[9] Hewitt, 98 Wash.App. at 88, 988 P.2d 496.
[10] In re Marriage of DewBerry, 115 Wash.App. 351, 362, 62 P.3d 525, rev. denied, 150 Wash.2d 1006, 77 P.3d 651 (2003).
[11] In re Marriage of Zahm, 138 Wash.2d 213, 226-227, 978 P.2d 498 (1999) (spousal maintenance); In re Marriage of White, 105 Wash.App. 545, 549, 20 P.3d 481 (2001) (distribution of property); Kruger v. Kruger, 37 Wash.App. 329, 333, 679 P.2d 961 (1984) (attorney fees).
[12] White, 105 Wash.App. at 549, 20 P.3d 481.
[13] RCW 26.09.080.
[14] Zahm, 138 Wash.2d at 227, 978 P.2d 498.
[15] RCW 26.09.090.
[16] 60 Wash.App. 51, 802 P.2d 817 (1990).
[17] Sheffer, 60 Wash.App. at 56, 802 P.2d 817.
[18] In re Marriage of Stenshoel, 72 Wash.App. 800, 813, 866 P.2d 635 (1993).
[19] Matter of Marriage of Griffin, 114 Wash.2d 772, 779, 791 P.2d 519 (1990).
[20] In re Marriage of Fox, 58 Wash.App. 935, 940, 795 P.2d 1170 (1990).