

2016 NOV 21 ... 8: 50

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| ALEKSANDRA MILUTINOVIC, | ) | No. 73345-1-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |
| CHRISTOPHER OLIN MORITZ, | ) | |
| | ) | |
| Respondent. | ) | FILED: November 21, 2016 |

SCHINDLER, J. — Aleksandra Milutinovic appeals several aspects of the decree of dissolution, parenting plan, and order of child support. We affirm in part, reverse in part, and remand.

FACTS

Aleksandra Milutinovic and Christopher Olin Moritz married in 2008 and had two children, S.M. and A.M.

In 2014, Aleksandra filed a petition for dissolution of the marriage and requested a continuing restraining order and a domestic violence protection order against Christopher.

Following a four-day trial, the superior court entered a decree of dissolution, parenting plan, order of child support, and findings of fact and conclusions of law. The

findings addressed domestic violence, supervised visitation, and the need for a mutual restraining order as well as a protection order.

### 2.13  Continuing Restraining Order

A temporary restraining order was entered on May 15, 2014. A mutual restraining order shall be continued as provided in the Decree of Dissolution . . . .

### 2.14  Protection Order

A domestic violence protection order was entered under this cause number on May 15, 2014, protecting Aleksandra . . . from Christopher . . . due to the history of domestic violence in this case. Respondent agrees the Protection Order should be continued for a period of two years. A new protection order shall issue, with allowance for implementation of the parenting plan under the terms stated therein.

. . . .

2.21.3 The parties have had a tumultuous relationship. It has been marked by episodes of serious physical abuse of Petitioner by Respondent. Respondent admits he has no tools to deal with his frustration and anger, and instead lashes out physically at Petitioner. Respondent contends this reaction would not transfer to his children, and Petitioner has not alleged that it has, but Petitioner has always been the primary caregiver. . . . And Respondent's violent outbursts toward Petitioner have occurred with the children present.

. . . .

2.21.5 A domestic violence assessment and parenting evaluation was conducted by Family Court Services. The Parenting Evaluator recommends, and both parents agree to, a graduated residential schedule with Respondent that begins with supervised visitation. . . .

2.21.6 To his credit, Respondent agrees he needs help learning to control his behavior, and he agrees to a graduated program for residential time with his children.[1]

---

[1] Emphasis added, boldface in original.

2

The parenting plan imposes RCW 26.09.191 restrictions giving Aleksandra sole decision-making authority and limiting Christopher's residential time with the children due to his "history of acts of domestic violence."

The dissolution decree includes a "continuing restraining order." The restraining order states, in pertinent part:

> Both parties are restrained and enjoined from disturbing the peace of the other.

> Both parties [are] restrained and enjoined from knowingly coming or remaining within 500 feet of the home, work place, school, or place of worship of the other party.

> Christopher . . . is restrained and enjoined from molesting, assaulting, harassing, or stalking Aleksandra.

Aleksandra filed a motion for reconsideration. Aleksandra argued in part that the parties did not agree to a mutual restraining order and that "[t]o enter an order that is mutual with respect to this provision shifts the Respondent's duty to remove himself from the Petitioner's presence, as set forth by the Order for Protection, to the victim." The court denied the motion. Aleksandra appeals.

## ANALYSIS

Aleksandra challenges several aspects of the dissolution decree and order of child support. As the appellant, it is her burden to provide this court with a record sufficient to review the issues raised on appeal. Story v. Shelter Bay Co., 52 Wn. App. 334, 345, 760 P.2d 368 (1988). Aleksandra has provided a transcript of only a small portion of the trial. Although she also filed a narrative report of proceedings, it was rejected by this court for noncompliance with RAP 9.3. As a result, the report of proceedings covers only a fraction of the testimony and arguments presented below. Accordingly, our ability to determine

whether and how arguments were preserved is hampered by an insufficient record. Nevertheless, because most of the issues were raised in some fashion on reconsideration, we have addressed Aleksandra's arguments despite the incomplete record.

Mutual Restraining Order

Aleksandra contends the mutual restraining order is based on an erroneous finding in the decree that the parties "agreed" to the order. The challenged finding is located under the heading related to "Service" and states:

> The restrained parties and their attorneys appeared in court at trial and agreed to entry of this restraining order. Service of this order shall be made upon the attorney of record for each restrained party.

Christopher contends, and Aleksandra does not dispute, that the agreement referenced in the finding "has to do with service of the order on the parties via their attorneys of record[ ], not agreement regarding the entry of the order."

In any event, on reconsideration, the trial court rejected the same argument Aleksandra advances here, stating that "[t]he restraints on the parties for coming into . . . contact with one another . . . are mutual." The court's reiteration of the mutuality of the restraining order without mentioning an agreement demonstrates the order was an exercise of the court's discretion under RCW 26.09.050 authorizing restraining orders in dissolution cases, not an agreed order.

Aleksandra next challenges finding of fact 2.13 that states, "A temporary restraining order was entered on May 15, 2014. A mutual restraining order shall be continued as provided in the Decree of Dissolution."

Because the 2014 temporary order restrained only Christopher, Aleksandra contends the current order that also restrains her is more than a continuation of the 2014

4

order. Aleksandra is correct. But an erroneous finding of fact that does not materially affect the conclusions of law is not prejudicial and does not warrant reversal. State v. Caldera, 66 Wn. App. 548, 551, 832 P.2d 139 (1992).

Aleksandra fails to demonstrate how the misstatement in finding of fact 2.13 is material to the court's decision. To the extent Aleksandra suggests that the court had authority to only continue the prior temporary restraining order against Christopher, she is mistaken. Courts in dissolution proceedings have broad statutory and equitable authority to impose restraining orders. RCW 26.09.050(1); Blackmon v. Blackmon, 155 Wn. App. 715, 721-22, 230 P.3d 233 (2010) (protection and restraining orders are essentially a type of injunction and are equitable in nature); 20 SCOTT J. HORENSTEIN, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 41:3, at 634-35 (2d ed. 2015) (courts have "broad equitable powers to fashion remedies," including restraining orders, over and above the available statutory remedies); Hough v. Stockbridge, 150 Wn.2d 234, 236, 76 P.3d 216 (2003).

Aleksandra also challenges the mutuality of the restraining order. For the first time on appeal, she contends the court cannot impose mutual restraining orders because "the Legislature has prohibited mutual domestic violence protection orders under RCW 26.50.060, unless both parties have filed a petition or counter-petition" for such an order.[2] Because Christopher did not seek a restraining order, Aleksandra contends the court lacked authority to impose one on her. We reject this contention for several reasons.

---

[2] Emphasis added.

First, we need not consider arguments raised for the first time on appeal. RAP 2.5(a). Second, Aleksandra's argument rests on prohibitions allegedly applicable to domestic violence protection orders, not to restraining orders. Aleksandra's attempt to equate the two types of orders ignores their distinct and different purposes. See 3 WASH. STATE BAR ASS'N, WASHINGTON FAMILY LAW DESKBOOK, § 74.5(3), at 74-24 (2d ed. 2012) ("Restraining orders are frequently mutual and are typically obtained to keep the peace and maintain the status quo. Some judges and court commissioners insist on entry of mutual restraining orders unless there is a significant reason not to enter these orders against both parties. A domestic violence protection order is entered to prevent domestic violence and is rarely mutual. If there is domestic violence in a case, the restraining order is not enough by itself to prevent harm to the victim — a protection order should be obtained.").

Third, as noted above, the power to issue restraining orders is both statutory and equitable, and in the absence of legislative limitations on the issuance of such orders, a court may impose them sua sponte. Cf. Hough, 150 Wn.2d at 236 (holding that power to issue an antiharassment protection order is both statutory and equitable, that a court sitting in equity can fashion broad remedies to do substantial justice, and that a district court therefore can issue a protection order sua sponte). Thus, Aleksandra's challenge to the mutuality of the restraining order fails.

Next, Aleksandra contends the court erred in failing to enter a finding justifying a restraining order against her. But the court found that "[t]he parties have had a tumultuous relationship" including domestic violence perpetrated by Christopher. Those findings are sufficient to support a mutual restraining order.

6

Finally, Aleksandra claims she was denied procedural due process because Christopher did not petition for a restraining order and she did not receive a full evidentiary hearing. But as discussed above, courts have authority to impose restraining orders sua sponte, and RCW 26.09.050(1) provides notice that dissolution courts can impose such orders. Aleksandra also had a full and fair opportunity to present evidence and cross-examine witnesses at trial. There was no violation of due process.

## Consent to Additional Monthly Expenses

Aleksandra contends the court "committed a legal error . . . when it barred [her] from obligating [Christopher] to more than $1,000 in additional monthly costs for special expenses . . . without [his] consent." Aleksandra claims this condition unlawfully limits the sole decision-making authority granted to her by statute.

Under RCW 26.09.191(1)(c), a court must not require mutual decision-making when a parent is found to have a history of domestic violence. Here, the court found Christopher had a history of domestic violence and therefore gave sole decision-making authority to Aleksandra. However, the child support order states that "[b]ecause petitioner has sole decision-making authority, she shall not financially obligate the father to additional monthly costs of more [than] $1,000 without his agreement." The parenting plan also states Christopher's financial contributions are limited by the order of child support "unless agreed to by the father." Citing In re Marriage of Mansour, 126 Wn. App. 1, 106 P.3d 768 (2004), Aleksandra contends these provisions violate RCW 26.09.191(1)(c) by infringing on her sole-decision making authority. We agree.

7

In Mansour, the trial court found the father's discipline of his son amounted to physical abuse warranting restrictions in the parenting plan under RCW 26.09.191(3). Mansour, 126 Wn. App. at 6. The court gave the mother sole decision-making authority but prohibited extracurricular activities or nonemergency health care requiring " 'additional' " or " 'significant' " expenses absent agreement of the parties or a court order. Mansour, 126 Wn. App. at 6. In reversing, we held that once a court makes a finding of physical abuse of a child, domestic violence, or one of the other acts listed in RCW 26.09.191, it cannot require mutual decision-making and must order sole decision-making by the other parent. Mansour, 126 Wn. App. at 10 (citing RCW 26.09.191, .187(2)(b)(i)). We concluded that "the father's financial veto substantially diminishes the mother's decision-making authority in violation of RCW 26.09.187(2)(b)(i), converting her authority to decide into an authority to propose." Mansour, 126 Wn. App. at 11.

Christopher ignores Mansour and simply argues the court's limitation on his financial obligations is within its discretion. While we agree that the court has discretion to limit his obligation for special expenses to $1,000, the court erred in requiring the parties to agree on costs above that amount. On remand, the court shall strike the requirement to agree.

Aleksandra also challenges the requirement that absent Christopher's agreement, all additional expenses exceeding $1,000 per month will be paid by her. Aleksandra contends this violates the requirement that unless the court deviates from the standard calculation, special child-rearing expenses must be borne by the parties in the same proportion as their basic child support obligation. See RCW 26.19.080(3); In

8

No. 73345-1-I/9

re Yeamans, 117 Wn. App. 593, 600-01, 72 P.3d 775 (2003). Because the requirement to agree to additional expenses over $1,000 must be stricken, we do not reach this issue.

Health Insurance Costs

Absent a deviation from the child support schedule, all "[m]onthly health care costs shall be shared by the parents in the same proportion as the basic child support obligation." RCW 26.19.080(2); cf. Yeamans, 117 Wn. App. at 600. Because the court did not deviate from the standard calculation, and because Aleksandra pays $90 a month for the children's insurance while Christopher's insurance is provided by his union at no cost to him, Aleksandra claims the court violated RCW 26.19.080(2) by not allocating the insurance costs in proportion to each parent's support obligation. Christopher contends there was no violation of the statute because while he pays no out-of-pocket premium for the children's coverage, his coverage "does have real costs, in the form of labor performed by the father."

The trial court's intent regarding health insurance payments is unclear. The court entered findings that Christopher pays nothing out-of-pocket for his insurance while Aleksandra pays $90 per month, that Christopher's insurance "could be lost," that both parents should maintain their coverage, and that both parents' "contribution to the health insurance premium is calculated in the Worksheet and included in the transfer payment." However, the Worksheet lists nothing for either parent under "Health Care Expenses" and there are no findings addressing allocation. Accordingly, on remand, the court shall clarify the allocation of health care expenses under RCW 26.19.080(2).

9

Interest on Child Support

The parties agree RCW 4.56.110(2) mandates 12 percent interest on judgments for unpaid child support accrued under a superior court order. The "Judgment Summary" in the order of child support states the judgment "shall bear interest at 6% per annum." On remand, the court shall amend the Judgment Summary to reflect a 12 percent interest rate.

Attorney Fees on Appeal

Aleksandra requests reasonable attorney fees and costs on appeal under RCW 26.18.160, RCW 26.50.060(1)(g), and RCW 26.09.140. The party requesting fees under RCW 26.09.140 must make a present showing of need to support the award. In re Marriage of Konzen, 103 Wn.2d 470, 478, 693 P.2d 97 (1985). Aleksandra's unrebutted financial declaration demonstrates her need and Christopher's ability to pay. Subject to compliance with RAP 18.1, we award Aleksandra reasonable attorney fees and costs on appeal.

We affirm in part, reverse in part, and remand.

WE CONCUR:

10