IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of:

MAHALINGAM LAKSHMANAN,

Appellant,

and

SEETHALAKSHMI MAHALINGAM,

Respondent.

No. 80296-8-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, C.J. — Mahalingam Lakshmanan appeals the trial court's entry of a parenting plan. He argues that the trial court erred by (1) limiting his residential time, (2) considering the recommendations of a court-appointed social worker, (3) granting sole educational decision-making authority to the mother, and (4) ordering him to complete a domestic violence class for dads. We affirm.

I.

Mahalingam[1] and Seethalakshmi Mahalingam entered into an arranged marriage in India in July 2012 and had one child in April 2013.[2]

---

[1] We use the parties' first names for clarity. No disrespect is intended.
[2] The pertinent facts are set forth in the trial court's uncontested findings of fact. Unchallenged findings are verities on appeal. In re Marriage of Rounds, 4 Wn. App. 2d 801, 804, 423 P.3d 895 (2018). We recite only those facts necessary to address the issues raised on appeal.

Soon after their wedding, Mahalingam began to criticize Seethalakshmi's manner of speech and dress as not being up to his family's standards and his family insulted her for not knowing how to cook. Mahalingam yelled at Seethalakshmi and struck her during the pregnancy. He also took Seethalakshmi's mobile phone away and restricted her ability to call friends. The couple moved to Washington in May 2013.

Once in Washington, Mahalingam withheld the immigration paperwork that Seethalakshmi needed to work in the United States and did not give her access to the family's bank accounts. He devoted a great deal of attention to controlling everything in their family. According to Seethalakshmi, the physical abuse she had experienced infrequently in India now occurred about once a week, which included Mahalingam pushing her and twisting her hands.

In 2014, as their child's one-year birthday approached, Seethalakshmi told her parents that she could not take it anymore, so her father bought tickets for her and the child to return to India after the birthday party. After the child's party, a big fight ensued. Mahalingam believed that Seethalakshmi's desire to return to India with the child meant the marriage was irretrievably broken, slapped her on the face, and refused to produce the child's passport. Mahalingam turned over the passport after Seethalakshmi's father threatened to call the police. Seethalakshmi and the child departed to India in May 2014.

Seethalakshmi and Mahalingam Facetimed each other when she was back in India, but Mahalingam never asked to Facetime with the child and indicated that he wanted her to "change." Meanwhile, Mahalingam's parents and family in India were denigrating Seethalakshmi's reputation by telling people she came to India without

Mahalingam's permission. In order repair the marriage and return to Washington, Seethalakshmi and her parents had to apologize to the business community, apologize to Mahalingam's family and pay them $3,000, and pay for the return tickets to Seattle.

In August 2015, after 15 months in India, Seethalakshmi and the child returned to Washington. The marriage continued to deteriorate. Mahalingam complained to others that Seethalakshmi was not working, but he would not provide her the immigration papers she needed to get a work permit, and he sometimes took her laptop, keys, and locked her inside or outside of the house for hours.

In December 2016, the couple had a two-day "mediation" that also involved a neighbor and several of Mahalingam's relatives and none of Seethalakshmi's. Mahalingam berated Seethalakshmi, yelled at her, and used abusive language. The neighbor described Mahalingam as "about to explode." Their child was present during this mediation.

In 2017, the physical and emotional abuse worsened. Seethalakshmi called the police several times. Mahalingam's verbal abuse of Seethalakshmi, including degrading her, always took place in front of their child. According to Seethalakshmi, she sent photographs of her injuries to her uncle in Texas and to her parents.[3] Seethalakshmi went to visit her uncle in Texas for a couple of weeks, she said, to escape Mahalingam's physical abuse. Upon her return to Washington, Seethalakshmi learned that Mahalingam had gotten rid of her car, placed her clothes in the garbage, and instructed her to sleep on the couch, on the floor, and in the garage. Meanwhile,

---

[3] None of these photographs were produced at trial or made a part of the record on appeal.

Mahalingam had taken over parenting the child and placed the child in extended day care.

On September 15, 2017, Mahalingam and Seethalakshmi fought over the use of a rice cooker. According to Seethalakshmi, Mahalingam hit her in the back and twisted her hands behind her back. Seethalakshmi began to record the encounter on her mobile phone. The video captured Mahalingam pushing Seethalakshmi three times, almost causing her to fall. Law enforcement officers responded to the scene and observed red marks and later bruises that were consistent with Seethalakshmi's version of the event.

Mahalingam was arrested and charged with assault in the fourth degree, domestic violence. He accepted a Stipulated Order of Continuance that required him to participate in domestic violence treatment, which he later completed. However, Mahalingam demonstrated very little insight into his own behaviors and continued to assert that his actions were all defensive.

On November 15, 2017, Mahalingam petitioned the King County Superior Court for legal separation, which was eventually converted into a dissolution proceeding. Days later, Seethalakshmi obtained a domestic violence protective order (DVPO) for herself and the child. Mahalingam then stopped paying the rent, the utilities, and the fee for the child to attend pre-kindergarten. He did not make any payments toward supporting the child until the trial court required him to do so in a temporary order. Seethalakshmi relied on friends to pay utility bills and to help her rent a studio apartment. The trial court ordered Mahalingam to pay Seethalakshmi maintenance based on his ability to pay and her need.

During the four-day bench trial in April 2019, the trial court heard the testimony of the parties, as well as 14 other family members, friends, and professionals. Sarah Zubair, a Family Court Services social worker, who conducted a parenting evaluation testified about her recommendations for a parenting plan. Zubair testified that Mahalingam's approach to parenting is "parent-centered." Mahalingam was determined to have the child placed in a "gifted academic program," and yet the child's teachers said the child was below grade level. Zubair also testified that Mahalingam had signed the child up for Kumon (beginning at age three), Indian dance and singing, piano, gymnastics, and other activities.

Among other things, Zubair recommended that there be a restriction on Mahalingam's residential time based on a history of acts of domestic violence and that the child continue to reside primarily with Seethalakshmi.

The trial court entered a permanent parenting plan, along with contemporaneous detailed findings of fact and conclusions of law, providing for the child to live primarily with Seethalakshmi. The court limited Mahalingam's residential time based upon a finding that he had "a history of domestic violence." The parenting plan allowed for the child to reside with Mahalingam overnight on weekends, every other week, from Friday afternoon to Monday morning. The plan also required Mahalingam to successfully complete the "DV Dads program" and follow all treatment recommendations, and allocated major decision-making authority to Seethalakshmi. Mahalingam moved for reconsideration, which the trial court denied.

Mahalingam appeals.

II.

We review a trial court's parenting plan for an abuse of discretion, which "occurs when a decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012) (citing In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)). The appellant bears the "'heavy burden of showing a manifest abuse of discretion.'" In re Marriage of Kim, 179 Wn. App. 232, 240, 317 P.3d 555 (2014) (quoting In re Marriage of Landry, 103 Wn.2d 807, 809, 699 P.2d 214 (1985)).

On review, we will uphold a trial court's findings of fact if substantial evidence supports them. In re Marriage of Bernard, 165 Wn.2d 895, 903, 204 P.3d 907 (2009). Evidence is substantial if it is sufficient to persuade a fair-minded person of the truth of the declared premise. Bernard, 165 Wn.2d at 903. We accept unchallenged findings of fact as verities on appeal. Rounds, 4 Wn. App. 2d at 804.

III.

A.

Mahalingam claims that the trial court abused its discretion by limiting his residential time with the child under RCW 26.09.191(2)(a) without first weighing the best interests of the child factors in RCW 26.09.187(3). We disagree.

RCW 26.09.187(3) states that a "child's residential schedule shall be consistent with RCW 26.09.191" and that the seven factors listed in RCW 26.09.187(3)(a)(i)-(vii) must be considered only if "the limitations of RCW 26.09.191 are not dispositive of the residential schedule." RCW 26.09.191 lists several circumstances under which the trial court must impose mandatory parenting plan restrictions. RCW 26.09.191(2)(a)(iii)

requires a trial court to limit a parent's residential time if it finds that the parent has "a history of acts of domestic violence as defined in RCW 26.50.010(3)." RCW 26.50.010(3)(b) defines "domestic violence" as the following conduct committed against a family or household member: "physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, sexual assault, or stalking as defined in RCW 9A.46.110."

Here, the trial court's finding that Mahalingam had a history of domestic violence is well supported by the record. Mahalingam hit, struck, slapped, and physically assaulted Seethalakshmi throughout their marriage. Because the trial court's restrictions imposed under RCW 26.09.191 were required, and dispositive of the residential schedule, the court was not required to consider the factors set forth in RCW 26.09.187(3)(a).[4]

B.

Next, Mahalingam argues that the residential restrictions imposed under RCW 26.09.191(2) were not reasonably calculated under the circumstances.

Any limitations imposed by the trial court pursuant to RCW 26.09.191(2) "shall be reasonably calculated to protect the child from the physical, sexual, or emotional abuse or harm that could result if the child has contact with the parent requesting residential time." RCW 26.09.191(2)(m)(i).

Here, the trial court expressly found that (1) the couple's child was present during a two-day "mediation" in which Mahalingam berated Seethalakshmi and was verbally aggressive, yelling, and about to explode, and (2) Mahalingam's "[v]erbal abuse,

---

[4] Because the unpublished opinion that Mahalingam cites on this issue is not necessary for a reasoned decision, we neither cite nor discuss it. See GR 14.1(c).

including degrading her, always took place in front of their child." A child's "direct and indirect exposure to domestic violence is harmful." Rodriguez v. Zavala, 188 Wn.2d 586, 598-99, 398 P.3d 1071 (2017) ("[E]xposure to domestic violence . . . qualifies as domestic violence under chapter 26.50 RCW.").

In view of the domestic violence to which their child was exposed, the trial court properly exercised its discretion to impose reasonably calculated restrictions on Mahalingam's residential time in an effort to protect the child from further harm.

IV.

Mahalingam contends that the trial court erred by considering and accepting Zubair's "biased" residential schedule recommendations.

We defer to the trial court on witness credibility and the persuasiveness of the evidence. In re Marriage of Akon, 160 Wn. App. 48, 57, 248 P.3d 94 (2011). After hearing all of the testimony and considering the evidence, the trial court was free to accept, reject, or modify the recommendations in Zubair's written report. Although Mahalingam argues that Zubair failed to "investigate and balance" the RCW 26.09.187 and .191 factors "on the record,"[5] this argument is misplaced because we do not review whether substantial evidence supports a social worker's recommendation. Instead, our review is limited to whether substantial evidence supports the trial court's findings and whether those findings support its conclusions. And, as we have already determined that the trial court's imposition of restrictions under RCW 26.09.191(2)(a) was proper, the trial court did not abuse its discretion by substantially agreeing with Zubair that Mahalingam's residential time should be limited.

---

[5] Mahalingam cites to another unpublished opinion on this so-called requirement but discussion of that opinion is not needed for us to address this argument.

V.

Mahalingam argues that the trial court abused its discretion by "automatically awarding" Seethalakshmi sole decision-making authority for their child's education.

RCW 26.09.191(1) provides:

> The permanent parenting plan shall not require mutual decision-making or designation of a dispute resolution process other than court action if it is found that a parent has engaged in any of the following conduct: . . .(c) a history of acts of domestic violence as defined in RCW 26.50.010(3) or an assault or sexual assault that causes grievous bodily harm or the fear of such harm or that results in a pregnancy.

"RCW 26.09.191 is unequivocal." Mansour v. Mansour, 126 Wn. App. 1, 10, 106 P.3d 768 (2004). Thus, once the trial court finds that a parent has a history of acts of domestic violence, such as Mahalingam in this case, the court "must not require mutual decision-making." Mansour, 126 Wn. App. at 10. Under RCW 26.09.187(2)(b), "[t]he court shall order sole decision-making to one parent when it finds that: (i) [a] limitation on the other parent's decision-making authority is mandated by RCW 26.09.191." "The Legislature designed a system whereby sole decision-making is granted to the parent that has not committed physical abuse." Mansour, 126 Wn. App. at 11 (emphasis added).

The record is replete with instances of Mahalingam physically abusing Seethalakshmi and engaging in acts of domestic violence. So, applying RCW 26.09.191(1) and .187(2)(b), the trial court properly awarded sole educational decision-making to Seethalakshmi. This was not an abuse of discretion.

VI.

Finally, Mahalingam argues that the trial court erred by requiring him to attend a domestic violence program for dads. He claims that this requirement was "based on the

premise that the child was present during the history of alleged acts of domestic violence." Contrary to Mahalingam's contentions, the trial court ordered Mahalingam to complete another domestic violence awareness program because it deemed the additional training necessary. The trial court heard testimony that Mahalingam needed "further treatment for the history of domestic violence" and entered findings that Mahalingam demonstrated "very little insight into his own behaviors, continuing to assert that his actions were all defensive." The trial court did not err by requiring completion of the DV Dads program.

VII.

Seethalakshmi requests an award of attorney fees on appeal. Under RAP 18.1, we may award attorney fees on appeal if applicable law provides for an award of fees. RCW 26.09.140 allows us to order a party to pay the other party for maintaining the appeal and the attorney fees in addition to statutory costs. Because Seethalakshmi demonstrates financial need, we grant her request subject to compliance with RAP 18.1(d).

Affirmed.

_Mann, C.J._

WE CONCUR:

_Andrus, A.C.J._        _Leach, J._